1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 083013)
2  MARCOS D. SASSO (State Bar No. 228905)
   ERICK K. KUYLMAN (State Bar No. 313202)
3  2029 Century Park East
   Los Angeles, CA 90067-3086
4  Telephone:  310.556.5800
   Facsimile:  310.556.5959
5  Email:      *lacalendar@stroock.com*

6

7  Attorneys for Defendant
     CITIBANK, N.A.,
8

                 **UNITED STATES DISTRICT COURT**
9
                **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  CHARLES ERWIN,                    )  Case No. 3:16-cv-3040-GPC-KSC
                                      )
12            Plaintiff,              )  [Assigned to the Honorable Gonzalo P.
                                      )  Curiel]
13        vs.                         )
                                      )  **REPLY OF CITIBANK, N.A. IN**
14  CITIBANK, N.A.                    )  **SUPPORT OF MOTION TO**
                                      )  **COMPEL ARBITRATION AND**
15            Defendant.             )  **STAY ACTION**
                                      )
16                                    )
                                      )  **Hearing:**
17                                    )  Date:     March 24, 2017
                                      )  Time:     1:30 p.m.
18                                    )  Courtroom:  2D
                                      )
19                                    )  Action Filed:  October 3, 2016
                                      )
20                                    )  [Supplemental Declaration of Kelly
                                      )  Booth filed concurrently]
21                                    )
                                      )
22                                    )
                                      )
23

24

25

26

27

28

                                                              16cv3040
LA 52045716

## I.   INTRODUCTION

In opposing Citibank's Motion,[1] Plaintiff repeatedly asserts that there is no arbitration agreement between the parties – but that argument completely mischaracterizes the nature of the current dispute before this Court.  The truth (which Plaintiff does not deny) is that Plaintiff entered into the Arbitration Agreement with Citibank when he opened his Account in March 2014 (see Booth Decl. (ECF No. 5-2) ¶¶ 5-7 & Ex. 1 (ECF No. 5-3)).  Thus, the "making" of the parties' Arbitration Agreement is *not* in dispute.  The current dispute is whether, *after* entering into a valid and enforceable Arbitration Agreement, Plaintiff opted-out of the parties' existing Arbitration Agreement.  Plaintiff claims that he did – Citibank maintains he did not.  Nevertheless, this "opt-out" dispute clearly falls within the broad scope of the Arbitration Agreement to which the parties had *already* agreed.  Indeed, the Arbitration Agreement expressly states that "[a]ll claims … arising out of or related to your account … or our relationship may be arbitrated."  (Booth Decl., Ex. 1 (ECF No. 5-3).)

Put differently, the question here is not whether the parties made an Arbitration Agreement (for clearly they did in March 2014), the issue is whether, through the opt-out process, the parties amended the existing credit card agreement to *remove* the arbitration provision.  Section 4 of the FAA authorizes the Court to conduct a summary proceeding only if the "making of the arbitration agreement … be in issue."  It is not here.  Because this dispute is whether the existing Arbitration Agreement was removed, it still falls within the scope of the original Arbitration Agreement.  To hold otherwise would be to void the original arbitration agreement based solely on the opt-out that Citibank offered – a result that would be completely contrary to basic contract law and the FAA.

---

[1] Except as stated, capitalized terms have the same meaning as in the Motion to Compel Arbitration ("Motion").

- 1 -

LA 52045716

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff certainly is allowed to pursue his claim that he opted-out of the parties' Arbitration Agreement, but that dispute must be resolved in an arbitral forum as previously agreed by the parties.  That dispute can easily and efficiently be determined by the arbitrator in the first instance.  From there the parties can either continue in arbitration on the merits, or if Plaintiff is successful, return the dispute to this Court.

In the alternative, were this Court to consider the opt-out dispute (which it should not), Plaintiff fails to meet his burden under the "mailbox rule" to shift the burden to Citibank to prove that the opt-out notice was not timely received.  As demonstrated in the Supplemental Booth Declaration, Citibank has a process for recording and handling opt-out requests, and Citibank's records reflect that no opt-out was ever received.  Thus, the presumption created under the "mailbox rule" is sufficiently rebutted by Citibank's evidence.

Accordingly, for the reasons set forth in the Motion and below, the Motion should be granted and the matter compelled to arbitration.

## II.   ARGUMENT

## A.   The Opt-Out Dispute Falls Squarely Within The Scope Of The Arbitration Agreement That Already Exists Between The Parties.

Under Section 4 of the FAA, "upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  Here, there is no dispute that when the Account was opened in May 2014, Plaintiff was mailed the Card Agreement containing the Arbitration Agreement, and Plaintiff subsequently used the Account.  (See Booth Decl. (ECF No. 5-2) at ¶¶ 5-7, Exs. 1-2.)  As a matter of law, Plaintiff agreed to the terms of the Card Agreement, including the Arbitration Agreement, when he used the Account. (See Motion (ECF No. 5-1) at 8-9).)  Critically, nowhere in his Opposition or

- 2 -

LA 52045716

Declaration does Plaintiff dispute this conclusion.  Thus, under Section 4, the "making" of the Arbitration Agreement is not in issue.

Instead, Plaintiff is arguing that he later opted out of ***an already existing*** Arbitration Agreement.  Even assuming Plaintiff did mail a letter on or about October 28, 2015 (which Citibank disputes), the Arbitration Agreement between the parties remains in place to cover any dispute regarding Plaintiff's alleged opt-out.  Under the clear terms of the Arbitration Agreement, as quoted above, any claim arising out of or relating to the account is subject to arbitration.  (Booth Decl. Ex. 1 (ECF No. 5-3) at 14.)  The issue here is not about whether an Arbitration was made (for it clearly was), it is whether Plaintiff's instant dispute falls within the Arbitration Agreement's coverage.

Importantly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).[2]  The Ninth Circuit makes clear that "because the scope of an arbitration agreement is a matter of contract, we must look to the express terms of the agreements at issue" when determining the scope of the arbitration provision at issue.  Ferguson v. Corinthian Colls., Inc., 733 F.3d 928, 937-38 (9th Cir. 2013).  Moreover, under settled Supreme Court precedent, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not

---

[2] Plaintiff's incorrectly contends that the presumption favoring arbitration is inapplicable here (Opposition (ECF No. 7) at 8-9), but he does so only by ignoring the already existing, and enforceable, Arbitration Agreement, that was in place at the time he allegedly mailed his opt-out letter.  The cases he cites – Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006), and McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union #16, 859 F.2d 1382 (9th Cir. 1988) – are inapposite and easily distinguishable.  Both cases address the applicability of an arbitration agreement to non-signatories, something that is not an issue here.  Unlike in Comer and McKinstry, at the time Plaintiff allegedly sent his opt-out letter, he had already agreed to the Arbitration Agreement.

- 3 -

LA 52045716

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1  susceptible of an interpretation that covers the asserted dispute." <u>AT&T Techs., Inc.</u>

2  <u>v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648

3  (1986).  Where the clause is broad, as is the case here, there is a heightened

4  presumption of arbitrability such that "'[in] the absence of any express provision

5  excluding a particular grievance from arbitration, we think only the most forceful

6  evidence of a purpose to exclude the claim from arbitration can prevail.'"  <u>Id.</u> at 650;

7  <u>Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.</u>, 58 F.3d 16, 20 (2d Cir. 1995)

8  (holding that, where the clause is broad, "then there is a presumption that the claims

9  are arbitrable").

10  　　　Under the terms of the Arbitration Agreement, Plaintiff's opt-out dispute

11  clearly relates to his Account and relationship with Citibank, and is therefore

12  squarely covered by the Arbitration Agreement.  Such language "reaches every

13  dispute between the parties having a significant relationship to the contract and all

14  disputes having their origin or genesis in the contract."  <u>Simula, Inc. v. Autoliv, Inc.</u>,

15  175 F.3d 716, 721 (9th Cir. 1999).  In order to fall within the Arbitration

16  Agreement's scope, Plaintiff's dispute "need only 'touch matters' covered by the

17  contract containing the arbitration clause and all doubts are to be resolved in favor of

18  arbitrability."  <u>Id.</u> (citation omitted).

19  　　　As noted above, the question presented here is whether the parties agreed to an

20  amended Card Agreement without any arbitration provision, not whether an

21  arbitration provision was made.  Such a dispute should be determined by an

22  arbitrator in the first instance.  Indeed, if the Court were to accept Plaintiff's position

23  – that this dispute is about the "making" of an arbitration agreement – the Court

24  necessarily would have to find that the parties' existing Arbitration Agreement

25  (undisputed by Plaintiff) was somehow terminated when Citibank voluntarily made

26  the opt-out offer.  That logic, however, is not supported by any facet of the law; an

27  agreement does not become extinguished by a parties offer to change the agreement.

28

- 4 -

LA 52045716

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1    Accordingly, the Motion should be granted and this entire action, including

2    Plaintiff's alleged opt-out claim, should be compelled to arbitration.[3]

3    **B.    Even If The Court Were To Consider Plaintiff's Opt-Out Claim, That**

4    **Claim Fails.**

5    As demonstrated in the Booth Declaration (ECF No. 5-2), Plaintiff was given

6    the opportunity to opt-out of the Arbitration Agreement, and based on Citibank's

7    records, he did not choose to opt out.  (Booth Decl., ¶¶ 8-10.)  In the Opposition,

8    Plaintiff claims that he did opt out by mailing a letter to Citibank on or about October

9    28, 2015; Citibank disputes this.  Notwithstanding that this Court need not decide

10   that dispute (as discussed above), Plaintiff's argument fails because (1) Plaintiff fails

11   to provide sufficient evidence to invoke presumption of receipt under the mailbox

12   rule, and (2) even if the mailbox rule were to apply, Citibank—through the

13   Supplemental Booth Declaration—presents sufficient evidence to rebut the

14   presumption of receipt.

15   **1.    Plaintiff Does Not Introduce Sufficient Facts To Invoke The**

16   **Presumption Of Receipt Under The Mailbox Rule.**

17   Under the mailbox rule, the "proper and timely mailing of a document raises a

18   rebuttable presumption that it is received by the addressee."  Anderson v. United

19   States, 966 F.2d 487, 491 (9th Cir. 1992).  Importantly the presumption of receipt is

20   "a mere inference of fact" and it can be rebutted "when it is opposed by evidence that

21   the letter[] [was] never were received" Rosenthal v. Walker, 111 U.S. 185, 194, 4 S.

22   Ct. 382, 28 L. Ed. 395 (1884); see In re Bucknum, 951 F.2d 204, 207 (9th Cir. 1991)

23   _____

24   [3] The threshold question of whether Plaintiff subsequently opted out of the
     Arbitration Agreement can be addressed quickly by an arbitrator.  In the event the

25   arbitrator decides in Plaintiff's favor on that issue, this matter can return to this Court
     for further proceedings.  Although Plaintiff does not raise any arguments concerning

26   any potential cost of arbitration, Citibank offers to pay Plaintiff's portion of the
     arbitration fees.  Under the American Arbitration Association, which is the parties'

27   selected arbitration firm under the Arbitration Agreement, Plaintiff's portion of the

28   fees is $200.  See https://www.adr.org/aaa/ShowPDF?doc=ADRSTAGE2026862.

- 5 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

16cv3040

LA 52045716

1 (presumption overcome "by clear and convincing evidence that the mailing was not,

2 in fact, accomplished."). "When a movant specifically denies receipt ..., a district

3 judge must then weigh the evidence and make a considered factual determination

4 concerning receipt, rather than denying [a] motion out of hand . . . ." Nunley v. City

5 of L.A., 52 F.3d 792, 796 (9th Cir.1995).

6       Plaintiff invokes the mailbox rule based on two documents: (1) his own

7 declaration (ECF No. 7-1), and (2) a copy of the letter he allegedly sent to Citibank.

8 (Id., Ex. A.) However, these documents, individually and collectively, do not

9 sufficiently establish that a letter was sent. See O'Toole v. U.S. Sec'y of Agric., 31

10 C.I.T. 79, 97 (2007) (holding that uncorroborated affidavit was insufficient to trigger

11 presumption of receipt and that "[t]he sufficiency of the evidence required to invoke

12 the mailbox rule must be determined based on the totality of the circumstances"). As

13 a preliminary matter, there is no evidence that the letter was created on or about

14 October 28, 2015, or that the letter was properly mailed to the correct address along

15 with the necessary postage. For example, Plaintiff did not produce a copy of the

16 original Word file used to create the October 2015 letter (with meta data intact) and

17 there is "no photocopy of a mailing envelope, a post office receipt, or a tracking slip

18 that would prove the letter was actually sent." See Hernandez v. Levy Premium

19 Foodservice, LP, No. 13-08790 MMM (SHX), 2014 WL 12561615, at *5 (C.D. Cal.

20 Apr. 29, 2014), aff'd, 649 F. App'x 537 (9th Cir. 2016) (finding mailbox rule was

21 not triggered because no showing letter was sent).

22       In the absence of probative proof that the letter was ever sent, the mailbox rule

23 is not triggered. See, e.g., Lewis v. United States, 144 F.3d 1220, 1222 (9th

24 Cir.1988) (applying the mailbox rule and finding that Internal Revenue Service "does

25 not have to take a taxpayer's unsupported word," but that when he provides

26 additional "circumstantial evidence supporting his word," the government cannot

27 simply doubt the credibility of the evidence). Plaintiff should not be entitled to the

28 mailbox rule presumption when the only evidence he presents is his uncorroborated

- 6 -

16cv3040

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 52045716

self-serving declaration, which lacks any marking to suggest its production or mailing date.  This is particularly the case given that, as stated in the Supplemental Booth Declaration, the only correspondence received by Citibank from Plaintiff in connection with the Account is a letter dated September 30, 2016.  (Supp. Booth Decl., ¶ 13, Ex. 4.)  That letter, unlike Plaintiff's October 25, 2015 letter, was sent by priority mail and includes a tracking number.

### 2. Any Presumption Of Receipt Is Unequivocally Rebutted By Citibank's Evidence.

Even if Plaintiff could satisfy the standard to trigger the mailbox rule, that only creates a presumption of receipt that can be rebutted "by evidence that the letter[] [was] never were received" <u>Rosenthal</u>, 111 U.S. at 194.  Notably, it is not an "irrebuttable" or "insurmountable barrier" that must be overcome, and "a presumption disappears where rebuttal evidence is presented." <u>Nunley</u>, 52 F.3d at 795-96.  As explained by the Ninth Circuit, a "specific factual denial of receipt [can] in fact rebut[]the presumption." <u>Id.</u> at 797 (adopting the "bursting bubble" or "specific factual denial" approach to presumptions and holding that when a denial of receipt is made, a court must review "evidence and make a considered factual determination concerning receipt, rather than denying the motion out of hand based upon proof of mailing."); <u>see</u> <u>In re Yoder Co.</u>, 758 F.2d 1114, 1118 (6th Cir. 1985) (observing that stand-alone testimony of non-receipt is sufficient to support a finding of non-receipt).

Moreover, the presumption is further rebutted when there is probative evidence of non-receipt, including when there is evidence of a specific process or procedure whereby had the document been received around the time the claimant asserted it was mailed, it would be presently located.  <u>See, e.g.</u>, <u>Schikore v. BankAmerica Supplemental Ret. Plan</u>, 269 F.3d 956, 961 (9th Cir. 2001) (finding defendant's evidence failed to demonstrate, among other things, procedures to ensure that had document been received at time plaintiff asserted it was mailed, it would

- 7 -

LA 52045716

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

presently be at the location searched by defendant); see also Legille v. Dann, 544 F.2d 1, 7–8 (D.C. Cir. 1976) (alleged recipient presented, as rebuttal evidence, detailed mail receipt procedures, to rebut the presumption of receipt of documents claimed to be mailed).

Not only has Citibank specifically denied receipt of the October 2015 letter, but the Supplemental Booth Declaration sets forth affirmative evidence of Citibank's policy and procedure for handling a customer's request to reject the Arbitration Agreement.  As demonstrated therein, had Citibank received Plaintiff's letter, it would have been scanned and the image would have been retained for 10 years. (Supp. Booth Decl., ¶ 8.)  Within five days of receipt of the letter, Citibank would have reviewed the letter to determine if a prior request had been made, and if none had been made, the receipt of the opt-out request would be specifically noted in the customer's account records.  (Id. ¶¶8-9.)  Furthermore, if timely, the customer's records would be noted with the specific notation, "ARBITRATION HAS BEEN REJECTED."  (Id. ¶ 11.)  Finally, the customer would be mailed a confirmation letter, confirming receipt of the opt-out request.  (Id.)

As discussed in the Supplemental Booth Declaration, Citibank has determined that no rejection letter was received from Plaintiff.  (See id. ¶¶ 12-16.)  Had one been received, its receipt would have been specifically noted in the Account records and Plaintiff would have been mailed a confirmation letter, which also would have been noted.  (Id.)  Neither of those notations are in the Account records, demonstrating Citibank's non-receipt of Plaintiff's October 2015 letter and sufficiently rebutting any presumption of receipt.[4]  See also See Pondexter v. Allegheny Cty. Hous. Auth., No. CIV.A. 11-857, 2012 WL 3611225, at *7 (W.D. Pa. Aug. 21, 2012) (finding successful rebuttal of presumption of receipt based on uncontroverted evidence of maintenance of process to receive and handle correspondence); In re Adler, Coleman

---

[4] As noted above, while the October 2015 letter is not located in Citibank's document management system, a copy of Plaintiff's September 2016 letter is, demonstrating that the efficacy of Citibank's process and procedure.

- 8 -

16cv3040

LA 52045716

1  Clearing Corp., 204 B.R. 99, 110 (Bankr. S.D.N.Y. 1997) (finding mailbox

2  presumption rebutted when defendant not only denies receipt but also discloses

3  procedure used to record incoming correspondence); Legille, 544 F.2d at 7

4  (defendant successfully rebutted presumption of receipt by providing detailed mail

5  receipt procedures).

6  Hadsell v. CACH, LLC, No. 12-CV-0235-L-RBB, 2014 WL 497433, at *5

7  (S.D. Cal. Feb. 6, 2014), cited by Plaintiff, is distinguishable.  There, the court found

8  that a factual issue remained because the submitted declaration did not establish what

9  defendant's receipt procedures were at the time; the declaration only established that

10  the attorney hired by defendant had no knowledge that a letter was received from the

11  plaintiff.  Id.  Unlike the attorney in Hadsell, who had no knowledge of any

12  processes whatsoever, Citibank has submitted testimony from someone with personal

13  knowledge of Citibank's internal procedures, and its adherence to said procedures.

14  Similarly, Plaintiff's reliance on Zemel v. Citibank, No. 2:16-cv-03976, 2016

15  WL 6139912 (D.N.J. Oct. 20, 2016), is unavailing.  In Zemel, the court found that

16  plaintiff's declaration of non-receipt alone was sufficient to create an issue of fact as

17  to the formation of the arbitration agreement to deny ***without prejudice*** Citibank's

18  motion to compel arbitration.[5]  Id. at *3.  Unlike in Zemel, Citibank has amply

19  demonstrated through uncontroverted evidence that it did not receive the October

20  2015 letter, and had it actually been mailed, Citibank had in place a policy and

21  procedure for handling and honoring a request to opt out.[6]  Thus, contrary to

22  Plaintiff's characterization, there is no issue of fact.  Moreover, the Court in Zemel

23  did not address the argument presented in this Reply – whether the arbitrator must

24  first decide the issue because it is not a question of whether an arbitration agreement

25  _____

   [5] Citibank is renewing its motion to compel arbitration in Zemel following discovery.

26

27  [6] Plaintiff's gratuitous statement that Citibank's "ignores" its customer's letters is
   unsupported by any factual evidence and, moreover, specifically contradicted by the
28  fact that Citibank has a copy in its records of Plaintiff's September 2016 letter.

- 9 -

16cv3040

LA 52045716

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1    was made, but whether the parties' existing arbitration agreement covers the parties'

2    dispute regarding whether the agreement was subsequently amended.

3          In sum, Citibank's undisputed evidence is comprehensive and detailed, and

4    sufficient to rebut any presumption of receipt.  Nevertheless, as discussed above, this

5    Court need not address this issue at this time, as it has been reserved by the parties

6    for the arbitrator's consideration in the first instance.

7    **C.      Under Section 4, If The Court Finds The Making Of The Arbitration**

8    **Agreement In Dispute, The Parties Should Proceed To A Bench Trial On**

9    **The Issue Of The Opt Out.**

10         As discussed, this matter should proceed to arbitration for a determination of

11   whether the parties' existing Arbitration Agreement was subsequently amended.  If

12   not, this Court should hold the Motion in abeyance and proceed, under Section 4 of

13   the FAA, to a bench trial on the issue of the opt out.

14                              **III.    CONCLUSION**

15         For the foregoing reasons, Citibank respectfully request that the Court grant

16   the Motion and compel arbitration of Plaintiff's claims in accordance with the

17   express terms of the valid and enforceable Arbitration Agreement governing the

18   Account.  In addition, this Court should stay this action pending completion of

19   arbitration proceedings.

20   Dated:  March 3, 2017            STROOCK & STROOCK & LAVAN LLP
                                      JULIA B. STRICKLAND
21                                    MARCOS D. SASSO
                                      ERICK K. KUYLMAN
22

23                                    By:        */s/ Marcos D. Sasso*
                                                 Marcos D. Sasso
24

25                                    Attorneys for Defendant
                                      CITIBANK, N.A.
26

27

28

- 10 -

16cv3040

LA 52045716

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2017, a copy of the foregoing **REPLY OF CITIBANK, N.A. IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's EM/ECF System.

*/s/ Marcos D. Sasso*
Marcos D. Sasso

16cv3040

LA 52045716